UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

ANGELA WAIKSNORIS,

     Plaintiff

v.

NCL (BAHAMAS) LTD d/b/a
NORWEGIAN CRUISE LINE,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, ANGELA WAIKSNORIS (hereinafter "Plaintiff" or "WAIKSNORIS"), hereby sues the Defendant, NCL (BAHAMAS) LTD. d/b/a NORWEGIAN CRUISE LINE (hereinafter as "NCL") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.     **THE PLAINTIFF.**  The Plaintiff, ANGELA WAIKSNORIS (hereinafter "WAIKSNORIS"), is *sui juris* and is a citizen and resident of Shenandoah, Pennsylvania.

3.     **THE DEFENDANT**. The Defendant, NCL (BAHAMAS) Ltd., A Bermuda Company d/b/a Norwegian Cruise Line is incorporated in Bermuda, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

1

4.     **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendants.

5.     **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7.     **DATE OF THE INCIDENT**.  The incident occurred on May 26, 2019.

8.    **LOCATION OF THE INCIDENT.**   The incident occurred onboard the vessel the *NCL Escape*, a ship in navigable water, while the Plaintiff was a passenger onboard. Accordingly, Plaintiff's claims are governed by general maritime law.  Specifically, the Plaintiff's incident occurred in her passenger cabin while the ship was in navigable waters.

9.    **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.    **NCL ESCAPE.** NCL custom built the *NCL Escape* cruise ship in partnership with Meyer Werft a shipyard in Papenburg, Germany. The *NCL Escape* was designed by or at the direction of NCL's shoreside New Build and other shoreside departments.  NCL employs architects, designers, and engineers.  The *NCL Escape* was built under the constant supervision of NCL's onsite construction managers, designers, architects, and engineers.  NCL approved, participated in, created, and controlled or had the right to control the design of the structures on board the *NCL Escape.* Under the contract with the shipyard, NCL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. NCL hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, NCL can withhold payment.  That includes the materials used for the metal threshold in the doorway of the bathroom in passenger's cabins aboard the *NCL Escape* which caused this fall and these injuries.

11.    The *NCL Escape* was delivered to NCL as finished on August 15, 2015. NCL has operated and maintained the ship continuously since that time.  NCL also owns and operates 17 other cruise ships. NCL has operated and maintained all of its ships, continuously since the time

when each of those ships were first built and put into service. The *NCL Escape* is a *Breakaway* Plus-class cruise ship, which also includes *NCL Joy*, *NCL Bliss*, and *NCL Encore.* NCL also custom built the *NCL Joy*, *NCL Bliss*, and *NCL Encore* to specifications and designs which were made by or under the supervision and participation of all NCL's ships. The design and construction of these ships was under the supervision and with the participation of NCL's personnel who were stationed onsite in the shipyard during construction.

12.     The *NCL Escape* has capacity for 4,266 passengers. The *NCL Escape* has 2,175 cabins on board. Each guest cabin has a restroom. NCL knows that its passengers will all utilize the restrooms in the cabins. There is a threshold on floor in the doorway of the cabin's restroom. The threshold is at least 5-inches in height and at least 1-inch in width. NCL features these unreasonably high thresholds on all of the ships in NCL's fleet. The unreasonably high threshold presents a tripping hazard to passengers walking through the doorway to access the restroom in their cabin. This is an ongoing, continuous problem of which NCL is well-aware.

13.     **<u>NOTICE: PRIOR SIMILAR INCIDENTS</u>**. NCL knew or should have known about the dangerous condition because of prior similar incidents. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

a. Sandra Sams was a passenger on board the *NCL Getaway* on October 23, 2016when she tripped and fell on the threshold in the doorway of the bathroom in her cabin. Sams suffered injuries as a result and filed a lawsuit against NCL. *Sandra Sams v. NCL (Bahamas) Ltd.,* Case No. 1:17-cv-23751-CMA. NCL also owns and operates the *NCL Getaway. NCL Escape* is a *Breakaway* Plus-class cruise ship, which also includes *NCL Joy*, *NCL Bliss*, and *NCL Encore*, built in partnership with Meyer Werft in Papenburg, Germany with NCL. The *NCL Bliss*' features and spaces were the same as the *NCL Getaway* and the *NCL Escape*. See *Hoover v. NCL(Bahamas) Ltd.*, Case No. 1:19-cv-22906-MGC, DE 32-5, pg. 14. Accordingly, there are similarities in the design of the the *NCL Getaway* and the *NCL Escape*. As such, prior incidents on board the *NCL Getaway* demonstrate NCL's notice.

b. Debra Robles was a passenger on board the *NCL Breakaway* on October 19, 2014when she tripped and fell on the threshold in the doorway of the bathroom in her cabin. Robles suffered injuries as a result and filed a lawsuit against NCL. *Debra Robles v. NCL (Bahamas) Ltd.*, Case No. 1:15-cv-20261-RNS. NCL owns and operates the *NCL Breakaway*. The *NCL Breakaway* and the *NCL Getaway* are sister ships. Accordingly, there are similarities in the design of the *NCL Breakaway*, the *NCL Getaway* and the *NCL Escape*. As such, prior incidents on board the *NCL Breakaway* demonstrate NCL's notice.

c. On April 11, 2014, Karin Lombardi was a passenger on board the *NCL Breakaway* when she tripped and fell on the threshold in the doorway of the bathroom in her cabin. Lombardi suffered injuries as a result and filed a lawsuit against NCL. *Karin Lombardi v. Guevara v. NCL (Bahamas) Ltd.,* Case No. 1:15-cv-20966-MGC.

    d.  Doris Rossi was a passenger on board the *NCL Dawn* on February 20, 2011, when she tripped and fell on the threshold in the doorway of the bathroom in her cabin. Rossi suffered injuries as a result and filed a lawsuit against NCL. *Doris P. Rossi v. NCL (Bahamas) Ltd.,* Case No. 1:12-cv-20554-UU. NCL also owns and operates the NCL Dawn.

14.    **NOTICE: ON-GOING, REPEATIVE PROBLEM.**  NCL knows or should know that passengers tripping on the unreasonably high thresholds is an on-going repetitive problem because NCL features these unreasonably high thresholds on all of the ships in NCL's fleet. NCL knows that passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board NCL's cruise ships.

15.    **NOTICE: POLICY AND PROCEDURES**. Additionally, NCL knows or should know that that the unreasonably high thresholds are dangerous because NCL's written policy and procedures require NCL to implement proper measures to prevent incidents on board its ships by providing "watch your step" warnings on the thresholds. See SMS Passenger and Crew Safety.

16.    **NOTICE: VIOLATION OF INDUSTRY STANDARDS**. Additionally, NCL knows or should know that relevant industry standards, regulations, and codes dictate the safety standards for on doorways, walkways.  "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)).Such guidelines are also probative of the defendants' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL

6

1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs")

17. **DAY OF THE INCIDENT.** Because NCL approved and allowed the unreasonably high threshold in the doorway of the bathroom in WAIKSNORIS' cabin, WAIKSNORIS tripped and fell and severely injured herself. On May 26, 2019, the NCL Escape was on the first day of the subject cruise. WAIKSNORIS had not used the restroom in her cabin before the incident occurred. At approximately 8:00pm, WAIKSNORIS was in her cabin, walking to use the restroom for the first time. The 5-inch threshold was not readily apparent. WAIKSNORIS tripped and fell forward over the threshold. WAIKSNORIS' right shoulder hit the wooden shelf next to the toilet in the restroom and her forehead hit the floor.

18.     As a result of the trip and fall, WAIKSNORIS's right shoulder was dislocated and she had two nondisplaced fractures in the humerus head, the bone in the upper arm that connects to the shoulder socket. WAIKSNORIS had a closed reduction performed in *NCL Escape*'s infirmary to place her dislocated right shoulder back into place. A second closed reduction was performed three days later in a hospital in Bermuda. WAIKSNORIS also suffered a concussion as a result of the trip and fall. WAIKSNORIS suffered and will continue to suffer severe, debilitating, and permanent injuries.

<u>**COUNT I**</u>
<u>**NEGLIGENT FAILURE TO WARN**</u>

19.     The Plaintiff, WAIKSNORIS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

20.     This is an action for negligence of NCL failing to warn passengers, including WAIKSNORIS, of its hazards, risks or dangers.

21.     <u>**DUTIES OWED BY THE DEFENDANTS**</u>.   NCL owes a "duty to exercise reasonable care for the safety of its passengers," including WAIKSNORIS. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendants' "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

8

22.     NCL owes a duty as a common carrier to its passengers to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go.  NCL owes a duty of reasonable care under the circumstances. NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Escape*. The *NCL Escape* has capacity for 4,266 passengers. The *NCL Escape* has 2,175 cabins on board. Each guest cabin has a restroom. NCL knows that its passengers will all utilize the restrooms in the cabins. There is a threshold on floor in the doorway of the cabin's restroom. The threshold is at least 5-inches in height and at least 1-inch in width. NCL features these unreasonably high thresholds on all of the ships in NCL's fleet. Passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board NCL's cruise ships. The unreasonably high threshold presents a tripping hazard to passengers walking through the doorway to access the restroom in their cabin. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes warning of dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

23.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The doorways in the passenger cabins are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

24.     The Defendant had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

25.     NCL knew or should have known about the dangerous condition of the threshold from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

26.     NCL knows or should know that that the unreasonably high thresholds are dangerous because NCL's written policy and procedures require NCL to implement proper measures to prevent incidents on board its ships by providing "watch your step" warnings on the thresholds.

27.     NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

28.     The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus,

the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

29.     NCL is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go. NCL distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  NCL train its crew members to warn passengers of hazardous or dangerous conditions verbally, with warning signs, and/or marking the area to prevent passengers from tripping on the hazardous or dangerous condition.

30.     **NCL BREACHES OF DUTY.**  NCL breached its duty to warn WAIKSNORIS of the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.  NCL breached its duties to the Plaintiff by its actions and conduct.  NCL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the threshold where WAIKSNORIS fell on May 26, 2019. NCL' crew members failed to reasonably and regularly make audible announcements about the unreasonably high thresholds. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendants in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

31.     **PROXIMATE CAUSE**: NCL's failure to properly warn WAIKSNORIS of the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019, proximately caused the Plaintiff's injuries. Had NCL properly warned WAIKSNORIS of the dangerous condition, WAIKSNORIS would have been aware of the

dangerous condition. WAIKSNORIS therefore would have never fell on the threshold in the doorway of the restroom in her cabin on May 26, 2019.

32.    **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to WAIKSNORIS in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.    The losses are either permanent or continuing. WAIKSNORIS has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, WAIKSNORIS demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

33.    The Plaintiff, WAIKSNORIS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

34.     This is an action for negligence due to NCL's negligent design, construction and selection of materials.

35.     **<u>DUTIES OWED BY NCL</u>**: NCL owes a "duty to exercise reasonable care for the safety of its passengers" including WAIKSNORIS. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances**." *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of materials on the *NCL Escape.*

36.     NCL owes a duty of reasonable care under the circumstances. The circumstances are as follows: The exterior and interior of *NCL Escape* was built in Germany at a shipyard under the constant supervision of NCL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, NCL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. NCL hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, NCL can withhold payment. Under the contract with the shipyard, NCL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. NCL hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, NCL can withhold payment That includes the threshold in the doorway of the restroom in the passenger's cabin on board the *NCL Escape* which caused WAIKSNORIS' fall and her injuries.

37.     The *NCL Escape* was delivered to NCL as finished on August 15, 2015. NCL has operated and maintained the ship continuously since that time.  NCL also owns and operates 17 other cruise ships. NCL has operated and maintained all of its ships, continuously since the time when each of those ships were first built and put into service. The *NCL Escape* is a *Breakaway* Plus-class cruise ship, which also includes *NCL Joy*, *NCL Bliss*, and *NCL Encore.* NCL also custom built the *NCL Joy*, *NCL Bliss*, and *NCL Encore* to specifications and designs which were made by or under the supervision and participation of all NCL's ships. The design and construction of these ships was under the supervision and with the participation of NCL's personnel who were stationed onsite in the shipyard during construction.

38.     Upon information or belief, NCL maintain shoreside departments that are responsible for the design, selection and construction of NCL' ships. Upon information or belief, NCL also maintain shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when NCL refit or modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by NCL.  As such, NCL maintained the ultimate control over the design and construction of the *NCL Escape.* Upon information and belief, NCL's contract with the shipyard allowed NCL to make progressive payments as work was completed. NCL payment scheme allowed NCL the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

39.     NCL chose to create, design, and construct all of the surfaces on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

40.     NCL should have known that the threshold it chose to create, design, and construct in the doorway of the restroom in WAIKSNORIS' cabin was reasonably dangerous.

41.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The doorways in the passenger cabins are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

42.     The Defendant had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

43.     NCL knew or should have known about the dangerous condition of the thresholds from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

44.     NCL knows or should know that that the unreasonably high thresholds are dangerous because NCL's written policy and procedures require NCL to implement proper measures to prevent incidents on board its ships by providing "watch your step" warnings on the thresholds.

45.     NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See,

*e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

46.     The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

47.     NCL's duty to design, construct and select materials for all areas and features of its vessels, including the thresholds in the doorway of the restroom in passenger's cabins, is part of NCL's duty of reasonable care under the circumstances. NCL had a duty to design and construct the thresholds aboard the *NCL Escape* in a reasonably safe manner and in accordance with industry standards.  NCL's duty is part of its duty of reasonable care under the circumstances.

48.     **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to WAIKSNORIS and was negligent by approving, designing, constructing, and/or selecting, the thresholds in the doorway of the restroom in passenger's cabins on board the *NCL Escape*. NCL failed to design, construct, select, approve and/or reject materials that complied with industry standards.  The design and/or materials NCL approved or selected and used to construct the thresholds in the doorway of the restroom in passenger's cabins on board the *NCL Escape* was unreasonably dangerous. NCL failed to install lighting in the doorway, install lighting on the threshold, paint the threshold with black and yellow strips, or place a warning sign on the threshold and/or a warning sign on the wall near the restroom.

49.     Because NCL had the ultimate control over the design, construction and selection of materials for its ships, NCL could refuse to approve the design, construction and selection of materials used for the thresholds in the doorway of the restroom in passenger's cabins on board the *NCL Escape*. NCL knew or should have known about the dangerousness of the thresholds in the doorway of the restroom in passenger's cabins on board the *NCL Escape.*.

50.     NCL knew or should have known of the dangerousness of the thresholds in the doorway of the restroom in passenger's cabins on board the *NCL Escape* since their installation between 2014 and 2015. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

51.     **PROXIMATE CAUSE**: NCL's negligent design, construct and select materials proximately caused WAIKSNORIS' injuries.  Had NCL properly designed, constructed and selected the materials of the thresholds in the doorway of the restroom in passenger's cabins on board the *NCL Escape,* WAIKSNORIS would never have fell  on May 26, 2019.

52.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to WAIKSNORIS in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. WAIKSNORIS has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, WAIKSNORIS demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO MAINTAIN**

53.    The Plaintiff, WAIKSNORIS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

54.    This is an action for negligence of NCL failing to maintain the doorway of the bathroom in passenger's cabins on board the *NCL Escape* in a safe manner.

55.    **DUTIES OWED BY THE DEFENDANTS**.  NCL owes a "duty to exercise reasonable care for the safety of its passengers," including WAIKSNORIS. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

56.    NCL owes a duty as a common carrier to its passengers to maintain the doorway of the bathroom in passenger's cabins on board the *NCL Escape* in a safe manner. NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Escape*. The *NCL Escape* has capacity

for 4,266 passengers. The *NCL Escape* has 2,175 cabins on board. Each guest cabin has a restroom. NCL knows that its passengers will all utilize the restrooms in the cabins. There is a threshold on floor in the doorway of the cabin's restroom. The threshold is at least 5-inches in height and at least 1-inch in width. NCL features these unreasonably high thresholds on all of the ships in NCL's fleet. Passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board NCL's cruise ships. The unreasonably high threshold presents a tripping hazard to passengers walking through the doorway to access the restroom in their cabin. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes maintaining surfaces on board the NCL Escape, including where WAIKSNORIS tripped and fell on May 26, 2019.

57.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The doorways in the passenger cabins are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

58.     The Defendant had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

59.     NCL knew or should have known about the dangerous condition of the thresholds from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents;

prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

60.    NCL knows or should know that that the unreasonably high thresholds are dangerous because NCL's written policy and procedures require NCL to implement proper measures to prevent incidents on board its ships by providing "watch your step" warnings on the thresholds.

61.    NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

62.    The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

63.    **NCL BREACHES OF DUTY.**  NCL breached its duty to maintain the threshold in the doorway of the bathroom in passenger's cabins on board the *NCL Escape* on May 26, 2019 in a safe manner.  NCL breached its duties to WAIKSNORIS by its actions and conduct.  NCL

failed to maintain and inspect the area where WAIKSNORIS tripped and fell. NCL failed to install lighting in the doorway, install lighting on the threshold, paint the threshold with black and yellow strips, or place a warning sign on the threshold and/or a warning sign on the wall near the restroom. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

64.    **PROXIMATE CAUSE**: NCL's failure to maintain the doorway of the bathroom in passenger's cabins on board the *NCL Escape* in a safe manner, proximately caused WAIKSNORIS' injuries. Had NCL properly maintained and inspected the threshold in the doorway of the bathroom in passenger's cabins on board the *NCL Escape*, WAIKSNORIS would have never tripped and fell on *NCL Escape* on May 26, 2019.

65.    **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to WAIKSNORIS in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. WAIKSNORIS has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, WAIKSNORIS demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic

damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate

**COUNT IV**
**NEGLIGENT TRAINING OF PERSONNEL**

66.     The Plaintiff, WAIKSNORIS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

67.     This is an action for negligence of NCL negligent training of shipboard crewmembers.

68.     **DUTIES OWED BY THE DEFENDANTS**.  NCL owes a "duty to exercise reasonable care for the safety of its passengers," including WAIKSNORIS. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

69.     NCL owes a duty as a common carrier to its passengers to train its crew members warn of dangers known to NCL where NCL invite or reasonably expect passengers to go.  NCL owes a duty of reasonable care under the circumstances. NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Escape*. The *NCL Escape* has capacity for 4,266 passengers.

The *NCL Escape* has 2,175 cabins on board. Each guest cabin has a restroom. NCL knows that its passengers will all utilize the restrooms in the cabins. There is a threshold on floor in the doorway of the cabin's restroom. The threshold is at least 5-inches in height and at least 1-inch in width. NCL features these unreasonably high thresholds on all of the ships in NCL's fleet. Passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board NCL's cruise ships. The unreasonably high threshold presents a tripping hazard to passengers walking through the doorway to access the restroom in their cabin. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes training its crew members to warn passengers of dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

70.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The doorways in the passenger cabins are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

71.     NCL train its shipboard crewmembers to warn passengers of the dangerous conditions on board the *NCL Escape*, including the unreasonably high thresholds that may cause passengers to fall. NCL knew or should have known of the importance of training its crewmembers to warn passengers of the dangerous conditions on board *NCL Escape* including the unreasonably high thresholds that may cause passengers to fall. NCL train its crewmembers that passenger may

not know that surfaces on board *NCL Escape* including the thresholds may be dangerous and could cause them to fall. NCL knew or should have known the importance of training its crewmembers that passenger may not know of the dangerous conditions on board *NCL Escape* including the unreasonably high thresholds. NCL train its crewmembers to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from slipping and falling. NCL knew or should have known of the importance of training its crew members to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from falling. NCL also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  NCL documents dangerous hazards and prior incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. However, despite knowing how and the reason why NCL should train its crewmembers, NCL failed to do so.

72.     The Defendant had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

73.     NCL knew or should have known about the dangerous condition of the thresholds from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

74.     NCL knows or should know that that the unreasonably high thresholds are dangerous because NCL's written policy and procedures require NCL to implement proper

measures to prevent incidents on board its ships by providing "watch your step" warnings on the thresholds.

75.     NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

76.     The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

77.     NCL's duty to properly train its crewmembers is part of NCL's duty of reasonable care under the circumstances. This duty requires NCL to properly train its crew members to properly to warn passengers of dangerous conditions on board the *NCL Escape* including the unreasonably high thresholds that may cause passengers to fall.

78.     **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to WAIKSNORIS and was negligent by failing to reasonably train its crewmembers to warn passengers of the dangerous conditions on board the *NCL Escape* including the threshold where

WAIKSNORIS fell on May 26, 2019. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

79.     At the time WAIKSNORIS, fell on the threshold, the crewmember that was responsible for warning, maintaining and inspecting that area failed to do so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like WAIKSNORIS, of the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

80.     **PROXIMATE CAUSE**: NCL's failure to properly train NCL crew members proximately caused WAIKSNORIS' injuries.  Had NCL properly trained NCL's crew members to warn passengers about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019, the crewmember would have warned WAIKSNORIS and WAIKSNORIS would have been aware of the dangerous condition. WAIKSNORIS therefore would never have fell on the threshold on May 26, 2019.

81.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to WAIKSNORIS in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. WAIKSNORIS has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, WAIKSNORIS demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V
## NEGLIGENT SUPERVISION OF PERSONNEL

82.     The Plaintiff, WAIKSNORIS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 18, above.

83.     This is an action for negligence of NCL negligent supervision of shipboard crewmembers.

84.     **DUTIES OWED BY THE DEFENDANTS**.  NCL owes a "duty to exercise reasonable care for the safety of its passengers," including WAIKSNORIS. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

85.     NCL owes a duty as a common carrier to its passengers to supervise its crew members to ensure NCL's crew members are properly warning passengers of dangers known to NCL where NCL invite or reasonably expect passengers to go.  NCL owes a duty of reasonable

care under the circumstances. NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Escape*. The *NCL Escape* has capacity for 4,266 passengers. The *NCL Escape* has 2,175 cabins on board. Each guest cabin has a restroom. NCL knows that its passengers will all utilize the restrooms in the cabins. There is a threshold on floor in the doorway of the cabin's restroom. The threshold is at least 5-inches in height and at least 1-inch in width. NCL features these unreasonably high thresholds on all of the ships in NCL's fleet. Passengers are not familiar with these unreasonably high thresholds and that these unreasonably high thresholds are not readily apparent to passengers on board NCL's cruise ships. The unreasonably high threshold presents a tripping hazard to passengers walking through the doorway to access the restroom in their cabin. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes supervising its crew members to ensure that passengers are properly warned about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

86.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  The doorways in the passenger cabins are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

87.     NCL should have become aware that the crew member(s) was failing to properly warn passengers about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

88.     NCL should have become aware that the crew member(s) was failing to properly warn passengers about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019 from prior similar incidents. NCL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

89.     NCL knows or should know that that the unreasonably high thresholds are dangerous because NCL's written policy and procedures require NCL to implement proper measures to prevent incidents on board its ships by providing "watch your step" warnings on the thresholds.

90.     NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

91.     The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition and/or

(c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

92.    NCL's duty to properly supervise its crewmembers is part of NCL's duty of reasonable care under the circumstances. This duty requires NCL to properly supervise its crew members to ensure that the crew members are properly warning passengers about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019.

93.    **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to WAIKSNORIS and was negligent by failing to reasonably supervise its crew members to ensure that the crew members are warning passengers about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

94.    **PROXIMATE CAUSE**: NCL's failure to properly supervise NCL crew members proximately caused WAIKSNORIS' injuries.  Had NCL properly supervised NCL's crew members to warn passengers about the dangerous conditions on board the *NCL Escape* including the threshold where WAIKSNORIS fell on May 26, 2019, the crewmember would have warned WAIKSNORIS about the dangerous condition and WAIKSNORIS would have been aware of the dangerous condition. WAIKSNORIS therefore would have never fell on May 26, 2019.

95.    **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to WAIKSNORIS in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in

the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. WAIKSNORIS has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, WAIKSNORIS demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:      *s/ Lisa C. Goodman*

**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**LISA C. GOODMAN, ESQ.** (FBN 118698)
lgoodman@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*